Cite as 2023 Ark. App. 447

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-22-490

|  |  |
|---|---|
| TROY CHRISTOPHER BREWER<br>APPELLANT<br><br>V.<br><br>ALEXIS NICHOL PATTERSON<br>APPELLEE | Opinion Delivered October 4, 2023<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br>[NO. 71DR-22-27]<br><br>HONORABLE H.G. FOSTER, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

**WAYMOND M. BROWN, Judge**

Appellant Troy Brewer brings this one-brief appeal challenging the final order by the Van Buren County Circuit Court extending an order of protection against him until May 2026. Appellant does not contest that there was sufficient evidence to support the extension of the order of protection to appellee Alexis Patterson; however, he argues that the evidence was insufficient to warrant an extension as to his son, MC. We find merit in his argument, and we affirm in part and reverse and dismiss in part.

Appellee sought an ex parte order of protection on March 18, 2022, on behalf of herself and MC. In her petition, she stated that appellant has a history of domestic abuse, including an arrest for third-degree domestic abuse against her in 2020. She reported that after appellant's six months' probation, which ended in 2021, appellant began putting his

hands on her; started being physically, verbally, and mentally abusive to her; threatened to kill himself if she tried to leave him; and has threatened to wreck his car and kill them both. Appellee also reported that on March 17, appellant drove up and down the road in front of her workplace and sent her friend requests on social media despite there being a no-contact order in place. Appellee alleged that in the most recent act of abuse, March 14, appellant was yelling and driving at unreasonable speeds out of anger and that he punched her left arm, pulled her hair, and threw shotgun shells and hit her in the face. She stated that the Van Buren Sheriff's Office was contacted, which resulted in appellant's arrest for domestic abuse and a no-contact order being issued.

The Van Buren County Circuit Court entered an ex parte order of protection on March 21 that applied to both appellee and MC until April 11. The order of protection was subsequently extended until May 17 due to continuances being granted in the case. On May 16, the circuit court conducted a hearing on the petition. At the hearing, appellee testified about the history of domestic abuse perpetrated against her by appellant. She stated that in 2020, appellant tried to take her phone from her and she would not let him, so he slapped her in the back of her arm, and they subsequently moved to the bedroom where a shotgun was located on the bed. She said that appellant went to move the shotgun and it fired, sending bullet fragments into the wall. She testified that appellant told her not to tell anyone what happened. She admitted that she had grabbed the shotgun and threatened to kill herself and that appellant tried to take it from her. When he could not get the gun from her, appellant began kicking and punching her in the face, head, and legs. She also admitted

2

that she fired the shotgun out the back door to keep appellant away from her. She subsequently locked herself in a back room and called law enforcement. She introduced photos of the injuries appellant caused in the 2020 incident. She stated that she asked for the criminal charges stemming from the 2020 incident to be dropped. She said that they resumed a physical relationship after the charges were dropped.

Appellee testified that after appellant's probation had ended, he again became physically, mentally, and verbally abusive. She said that another major incident took place in January 2022. According to appellee, they had been arguing while coming from her grandparents' house, and appellant threatened to wreck the car and kill them both and started driving "unpleasant and violent." She stated that she told appellant that they have a son he needed to think about and made appellant pull over. She said that MC was born July 10, 2021. She stated that MC was not in the vehicle at the time of this incident.

Appellee testified that she met with appellant in March at Tropical Fusion to have a "civil conversation." She said that they drove off and went behind a school and talked. She testified that she joked with appellant about some "sexual [arousal]" pills she had seen, which made appellant mad. She stated that they were also discussing appellant's plan to sell the house they used to live in and that they both got "irritated." She explained that she was irritated about who appellant planned to sell the house to. She stated that appellant was mad because he saw she had messaged an ex-boyfriend back. She said that as they were heading back to Tropical Fusion, appellant started driving erratically, threatening to wreck. She said that she reminded appellant about their son and asked him to take her back to

3

Tropical Fusion. She stated that appellant subsequently hit her in the face with shotgun shells. She said that she called the police before they made it back to Tropical Fusion and refused to get out of appellant's vehicle until the police arrived. She testified that appellant admitted hitting her and was placed under arrest. Appellee stated that there had been a shotgun in the vehicle between them, and when appellant reached for it, she tried to grab it from hm. That is when she was hit in the face with the shotgun shells. She said that appellant also punched her in the left arm and pulled her hair. She also introduced photos of her injuries. She said that appellant had added her on social media (Twitter) since the no-contact order has been in place but that he had not messaged her or anything.

Appellee testified about an incident in 2021 in which appellant had MC with him, and she asked appellant to bring MC back. She stated that she was worried for MC's safety because when appellant "gets mad, he drives at unreasonable speeds that are dangerous." She said that appellant showed up about thirty minutes later, and they were "sitting there yelling at each other." She stated that there was no physical violence during this incident. She testified that appellant had physically prevented her from leaving him at least eight different times. She stated that appellant would hold her down, curse at her, and tell her that she was not going anywhere.

On cross-examination, appellee agreed that she and appellant had a very volatile relationship. She denied instigating any of the arguments but said that she sometimes initiated the "questions." She said that she filed for an order of protection in 2020 but had it dismissed. She stated that she continued to have contact with appellant and to ride with

4

him. She said that in the latest incident, appellant turned the shotgun loose when she grabbed it.

Jason Cole testified that he works for the Johnson County Sheriff's Office and that he is a section chief for the Military Police at Fort Chaffee Arkansas National Guard. He stated that appellee was one of his soldiers. He said that he has witnessed appellant's verbal abuse of appellee over a half a dozen times in the past eighteen months. He denied witnessing any physical abuse by appellant but stated that he has seen bruises on appellee, which she indicated came from appellant. He also said that appellant admitted to him that he was responsible for injuries that prevented appellee from completing her physical-fitness test as well as other bruises.

Appellant unsuccessfully moved for directed verdict against the order of protection. As it relates to the issue now on appeal, appellant argued that "the order covers not only [appellee], but also [MC]. There's been no evidence in this case that [appellant] has harmed or attempted to harm [MC]." He contended that for an order of protection to be issued regarding MC, "there has to be some evidence that [appellant] abused, harmed, hurt or injured [MC], which is not the case." The circuit court denied that motion, stating that appellee "[does] not have to present evidence that provides a basis for me to decide whether [appellant's] presence poses such a danger to [MC] that the order of protection should be granted. I will deny your motion[.]"

Appellant testified and essentially denied appellee's version of events in which the police had be called to their home. When asked about the shotgun incident in 2020,

appellant stated that the gun went off accidentally when he was moving it off the bed because he did not want appellee to hurt herself. He stated that he placed the shotgun in the closet and then went outside as appellee asked. He said that when he tried to come back into the house, the door was locked. He testified that he then heard a shot coming from the back porch and that the front door was back unlocked. He said that when he went into the house, appellee was standing in the hall with the shotgun to her head, and he took it away from her. In relation to the March incident, appellant said that he did not remember anything about some pills but said that appellee got mad because she found a hair tie in his truck. He said that appellee then began texting "some dude." He stated that he grabbed at appellee's phone, and she "lifted her arm up to slap [him]." Appellant said that he acted in "self-defense" and put his arm up. He stated that he guesses he hit appellee in the shoulder. He testified that he still would not give appellee her phone back, so she grabbed the shotgun located between the seats, and he grabbed the shotgun shells and threw them at appellee. He said that when appellee ducked, he grabbed the shotgun and threw it in the back seat. He subsequently gave appellee her phone back.

Appellant testified that he is MC's father and that his name is on MC's birth certificate. He said that he has petitioned a court to acknowledge him as MC's father and to grant him visitation. He stated that both he and appellee were guilty of starting arguments. He testified that he has never done anything to harm MC.

On cross-examination, appellant denied causing the bruises on appellee in March other than the bruise on her shoulder. He stated that he held appellee down once,

preventing her from leaving. He admitted that he kicked appellee in 2020 because he was trying to make her let go of the shotgun and not harm herself. He said that appellee grabbed the shotgun first when they were in his truck in March. He stated that he threw the shells and hit her, causing appellee to duck and allowing him to take the shotgun and throw it in the back seat. He said that both he and appellee have driven erratically while in the vehicle together.

Appellant renewed his motion, contending that "there is no basis for [the] protective order to continue against [appellant] as it relates to [MC]." The circuit court denied the motion. The circuit court stated in pertinent part that

> [i]t is uncontroverted how [appellant] drives with the people that are supposed to be his family, in the car. It is uncontroverted that the [appellee] has indicated she wants this order of protection because she feels like he is dangerous to her. I have to agree, I grant the order protection.

The circuit court indicated that it would extend the order of protection for five years and agreed to issue findings in support of the order. The final order of protection, covering appellee and MC, was entered on May 18 and indicated that it would be effective until May 16, 2026. The findings of fact and conclusions of law were filed on June 7, 2022. It laid out the incidents of abuse, as testified to by appellee. It found that the order of protection was "necessary for the protection of the [appellee], and those who reside with her, to include her son, named in her Petition." The order also stated that appellant's word was the only evidence it had before it that MC was appellant's son. It found that no corroborating

7

testimony or documents were introduced to show that appellant is, in fact, MC's father.[1]

Appellant filed a timely notice of appeal on June 14. The order was amended on June 14 and again on June 15. Appellant filed an amended notice of appeal on July 12.

The standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[3] Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder.[4]

Appellee filed for an order of protection on behalf of herself and MC pursuant to Arkansas Code Annotated section 9-15-201[5] of the Domestic Abuse Act. Under section 9-15-205, when a petition for an order of protection is filed under the Domestic Abuse Act, the circuit court may provide relief to the petitioner upon a finding of domestic abuse.[6]

---

[1]Appellee noted in her petition for the order of protection that she and appellant share a child [MC]. At the hearing, appellee testified that she had reminded appellant about their son on at least two occasions. Therefore, this finding is not supported by the evidence.

[2]*Morales v. Garcia*, 2021 Ark. App. 438.
[3]*Id.*

[4]*Id.*

[5](Repl. 2020).

[6]Ark. Code Ann. § 9-15-205(a) (Repl. 2020).

"Domestic abuse" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members."[7]

Appellee had the burden of proving domestic abuse committed against her and MC. Appellant does not challenge the evidence to support the order of protection for appellee; however, he argues that appellee failed to present evidence that he committed domestic abuse against MC. On the record before us, we agree.

First, appellee did not allege any abuse by appellant as it related to MC. When she testified at the hearing, she stated that MC was not present during the car incident or any of the incidents mentioned in her petition. Her only concern was during an argument in 2021, appellant had MC with him, and she was concerned for his safety because when appellant "gets mad, he drives at unreasonable speeds that are dangerous." However, this was conclusionary, and she did not testify that she had witnessed appellant driving in this manner with MC. This court has reversed an order of protection as it related to a child where the child had been exposed to the domestic abuse the appellant had subjected the mom to.[8] More recently, in *Morales*,[9] we also reversed an order of protection in regard to the appellant's five children because, although the children witnessed the abuse on the mother by appellant,

---

[7]Ark. Code Ann. § 9-15-103(3)(A) (Repl. 2020).
[8]*See Kankey v. Quimby*, 2020 Ark. App. 471, 611 S.W.3d 671.

[9]*Supra.*

9

this was not enough to support a finding that the appellant had engaged in acts of domestic violence against them. Here, there was no testimony that MC witnessed the violence, that he was a victim of the violence, or that he was ever in fear of harm from appellant. Thus, the circuit court's order of protection as to MC was erroneous. We affirm the extension of the order of protection as to appellee; however, we reverse and dismiss that portion of the order that pertains to MC.[10]

Affirmed in part; reversed and dismissed in part.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Jeremy B. Lowrey*; and *Patterson Law Firm, P.A.*, by: *Jerry D. Patterson*, for appellant. One brief only.

---

[10]Because we are affirming on appellant's first point on appeal, we do not address his second argument that the circuit court used the wrong standard to extend the order of protection for MC and that the circuit court lacked jurisdiction to enter an order of protection on behalf of MC.